The next case on the calendar is Dixon v. Blanckensee. We have Mr. Kochevar for the appellant. Yes, your honor. Good morning, and Mr. Russell for the appellee. Good morning, your honor. Morning. All right, Mr. Kochevar, you have two minutes reserved for rebuttal. Go ahead. May it please the court, my name is Stephen Kochever and I was no constitutional violation in this case. Even if there had been, first, qualified immunity would protect warden Blanckensee, and second, Pivens would not provide a remedy. I want to stress up front that there was no constitutional violation here. The state court order on which King's claims rest did not command warden Blanckensee to do anything. Even if it did, a state court cannot bind a federal prison warden like warden Blanckensee. Mr. King conceded that point in his brief. On top of that, King did appear at the hearing at issue telephonically, a point he also conceded before this court and below. I'll move on to qualified immunity and Pivens, but with respect to each, I would like to reiterate that there is a fatal gap at the center of King's case. There simply isn't any unconstitutional conduct here that could defeat qualified immunity or be the basis of a Pivens claim. Moving on to qualified immunity, it clearly protects warden Blanckensee. Mr. King has failed to show that any asserted right was clearly established. His asserted right to be free from arbitrary government action is pitched at much too high a level of generality to defeat qualified immunity. There are no cases from this court or the Supreme Court that even come close to saying that the Constitution requires an inmate be produced in person for a pre-trial civil hearing in state court or that a federal prison acts arbitrarily somehow in producing an inmate telephonically without contemporaneously justifying her decision. None of the factors set out by this court and Donninger v. Nyhoff weigh in King's favor here. I'll turn to Pivens. Pivens does not provide a remedy here. The Supreme Court has repeatedly stressed that expanding the Pivens remedy is a disfavored judicial activity and should not happen if there is a reason to think that Congress is the proper branch to create a novel damages remedy. Here, there are several reasons that this court should pause before crafting a new Pivens remedy. Extending the remedy would encroach on the functions of the executive and the sensitive area of prison administration. In addition, Congress has considered remedies in this area through its passage of the Prison Litigation Reform Act but declined to create the remedy King seeks here. These considerations alone are sufficient not to engage in the disfavored activity of expanding the Pivens remedy. Unless the court has questions, I will rest on the submissions. I've got a question about and discuss this but in terms of what remedies would be available for this type of situation if an inmate wanted to be produced for some type of proceeding and the warden was ignoring that, what would be the remedies currently that an inmate would have? So my understanding is that the ARP within the Bureau of Prisons offers some sort of recourse. You know, grievances can be filed. In addition, and this is somewhat disputed, but there are probably remedies somehow at the state if, you know, post-judgment remedies there to try to reopen the case if there actually had been some sort of problem that that bared on the outcome of that case there. So those are some of the options that are available. Before we get that deep, I suppose there could have been an application. I mean, I'm not sure how it came to be that Mr. King appeared telephonically, whether that was arranged by the warden. And if so, it certainly supports your position that there's nothing arbitrary here if the warden is attempting to resolve this issue. But I assume that if he was aware that he was not going to be produced, he could apply to the state court to appear telephonically, right? Correct, Judge Lynch. And this is a little further out there because I've never seen this done, but there is such a thing as a writ of habeas corpus ad testificandum. I've never seen a petitioner invoke that remedy or a prisoner invoke that remedy. Usually, it's the other party in the civil litigation that does that, or perhaps the court on its own motion. I mean, I've issued writs of habeas corpus ad testificandum and ad prosecundum to have a prisoner produced. Now, of course, the state court couldn't do that, but I'm not sure that why a federal court, if it thought that somehow it was vital to the prisoner's interest to appear in person, that the court in the jurisdiction that would be the Southern District of New York here that has jurisdiction over Otisville could presumably direct that a prisoner be produced in some other jurisdiction, right? I think all of that is correct, Your Honor, and you've done perhaps a better job than I did. Well, it's just a weird thing. I was trying to think, what could you do if there were a real problem here? But that's what is done typically when, you know, if I wanted to have a pro se prisoner in a civil litigation produced in my courtroom to try that case, what I did was issue that kind of writ. And, of course, in that situation, I was usually the court that had the proceeding, and the state court can't do that by definition to a federal warden, but I imagine a federal court could. But that, you know, these are sort of strange waters, it seems to me, and certainly strange to invoke such a remedy, or any remedy at all, in a case where the proceeding in question does actually require the prisoner's presence. Yes, absolutely, Your Honor. I think the overall point here is that there are probably a number of ways to deal with situations like this, but one of them, a reasonable way, is to produce him telephonically, which is what happened here. Yes, and so that's sort of at the core of a lot of this, specifically in terms of qualified immunity, where there's a reasonable standard. Certainly the warden understood our actions to reasonable here by producing him telephonically. Just going to Judge Lynch's point, because I was thinking the same thing, normally to deal with some type, at least at the federal level, for this, but I was surprised to see, even though a state law is clear that no state can require production of a federal prisoner, I was somewhat surprised to see that a warden has discretion on his or her own, if they get such a request, to release the person. In other words, you don't have to go to a federal court and say, should we release this person to the state or not? You have the ability to make those decisions on your own through a regulation, obviously, but am I correctly understanding that, how it works? So I guess I want to be careful because my understanding is, in some cases, perhaps you do need something like a takeout order or something like that. I thought you did need something like that, but I was reading the regulation. It seems it to decide whether or not to produce the person or not. That is what the regulation states. I guess, again, we're sort of in the reverse of that situation. I understand. I'm just telling you, I'm surprised to see that. Yes. Was the fact that the individual is produced by telephone in any way communicated to the district court judge before the ruling was made, and is it anywhere in the complaint that, in fact, the individual was produced by telephone? So Mr. King acknowledged before the district court that he was produced telephonically, and I believe there's not a specific allegation either way in his complaint. I want to be careful there. I think he maybe says he was forced to miss a court appearance, but I'm not sure he has specific allegations about telephonically or not. But in the course of the proceedings before the district court, I believe the government first raised the point in a letter, which then Mr. King responded to acknowledging that, yes, he was produced telephonically. Because the allegation in the pleading was that he was unable to attend and the action was dismissed, right? Correct. Yes, and I don't want to quibble specifically because he was pro se, but I'm not sure he alleged with much specificity exactly what happened in terms of him not being physically produced. But he did acknowledge before the district court and has acknowledged before this court. It's accurate. It's accurate, in fact, that he was not able to attend, if you can screw attend to mean in person, and the action was dismissed, albeit it does not appear that it was dismissed by reason of any default. And that I guess gets us to the question of taking judicial notice of the judicial documents. That's correct, Your Honor. I'm not sure at this point that we actually still have a live issue on the question of the telephonic experience. As I understand Mr. King's response to both to the appeal and to the motion, or I guess on his motion, he seems to be acknowledging that he appeared telephonically. So I don't think that's still in dispute. There is still a dispute about judicial notice on the order, which I can address if the court would like. I think the key framing to keep in mind is that we're not asking the court to take judicial notice of any sort of facts here, but instead the fact of the order itself and what it says on its face, which is distinct from accepting some sort of factual finding that the state court made or something like that. Right. I think the issue is we have a judicial order, and I'll be interested to hear what Mr. Russell has to say about this, but it sounds as if the fact that he wants to, that he says we can't take judicial notice of, is something like the state court meant what it said. But I guess I'll have to ask him that, but the fact is that there was this order that we can certainly take judicial notice of, and the substance of it is it's dismissed, the case was dismissed for failure to state a claim in effect or whatever the Pennsylvania terminology would be for that. That's correct. I believe there are things about defects in service as well, but yes, all of that is correct. But not things about, it's not a default judgment or a failure to prosecute judgment or anything of that kind, and it makes no reference to any missed appearances or even having happened, let alone giving any weight to anything like that. That is correct, Your Honor. Yes. Thank you. Mr. Russell, it's your turn. Your Honors, and may it please the court. My name is David Russell. I was appointed to the district court by the district court to represent plaintiff Appelli on a pro bono basis. Mr. Russell, I just want to interrupt you. We can't see you, or I can't see you at least. Mr. Russell's courtroom deputy, whoever you asked to stop your video earlier, you have to ask them to start it again because I didn't stop you on our end. So that system that you're using, you have to ask them to start the video again for you. Okay, Your Honor, just a second. All right, much better. Okay. Great. Your Honors, and may it please the court. My name is David Russell. I was appointed to the district court by the district court to represent plaintiff Appelli on a pro bono basis after the government moved to reconsider. The district court was correct in refusing to dismiss this case. The court merely held that the complaint plausibly alleged that Blankensy's impairment on King's right to meaningfully access the courts had no chronological basis and was therefore arbitrary. In sum, the district court's right. It cannot be the case that a warden can decide which prisoners go to court and which don't without the consideration of any standard whatsoever that the decision is unreviewable. Is there anything in the complaint that says that other prisoners got to go to court for proceedings of this time? Your Honor, there is not. It is worth noting that this is a pro se complaint. We were brought on to represent the plaintiff. I understand that. I'm just trying to understand why the word arbitrary is anything but conclusory here. What do you understand by that? That the warden didn't give a reason? Correct, Your Honor. There was no submitted reason on the record and there has been no submitted reason. So there cannot be a penological basis that cannot satisfy rational basis. Isn't there an obvious penological basis? You've got a warden to whom the custody of this gentleman was entrusted by a federal court. He's committed to the custody of the attorney general and the attorney general or his designate sent him to this warden's institution. And the question is, I mean, it seems rather obvious, does it not, that there would be costs, risks, burdens in releasing someone, even into the custody of a sheriff, a non-federal official, putting him outside the jurisdiction of the federal government. And weighed against that is the fact that this is a preliminary appearance. And I don't know that we can take judicial notice, but long before there was COVID, every federal district judge in the country had conducted proceedings, I'm sure, in which a pro se prisoner appeared telephonically, rather than subject the prison system to the burden of sending the person in court for what trial conferences, which could recur in a civil litigation, time and time again, over a period of months, back to one court, back to the court, back to the prison, back to the court, back to the prison, when it's perfectly conventional. Today, it's conventional, even for the Court of Appeals, to have people appearing remotely given the extreme circumstances of the pandemic. But it's always been routine to have pro se prisoners appear telephonically, rather than ship them around the country on and off. So I'm having a little trouble understanding what's the beef here. Your Honor, there is no argument. The argument is not that ultimately it would be a reasonable impairment on his ability to access the courtroom to appear telephonically. If the fact that he appeared telephonically, but it's not as if it wouldn't, couldn't. Well, don't we have to look, there's no dispute, Mr. Russell, right? You've agreed that he appeared telephonically for this proceeding. Your Honor, the argument for not considering the telephonic appearance is the fact that the district court did not consider it for fear of converting it to a motion for summary judgment. The reason being is I will not bring it forward on appeal. But there are a number of facts and circumstances that after discovery could be forwarded by the court. But if the court wishes to accept the fact of the telephonic appearance, it's not as if it, you know. If we wish. The question is, normally we could take judicial notice of a transcript of a proceeding in another court. And indeed, I was under the impression that one of the reasons why you opposed our taking judicial notice is that it's moot because it's you know, we, we make some choice. We make a choice based on the fact that this is a fact. This is what happened. Correct, Your Honor. But it's a fact not properly before the court. It just, if there's a motion to dismiss. Excuse me. Why isn't it properly before the court? If it is, if your argument, first of all, why can't we take judicial notice of a dispute as to the authenticity of the transcript? Secondly, the only argument you made as to, or the principle argument you made as to why we shouldn't take judicial notice of that fact is that we don't need to because it is a conceded fact. Your Honor, we would, we would argue that the, that the fact that he appeared telephonically should not be considered at this moment, given that there's additional facts in the record and it's at the motion to dismiss stage. But it's, if the court wishes to take it, I can address the telephonic appearance in your question concerning the telephonic appearance. Okay. So concerning the reasonableness of it, it's not as if his appearance telephonically could not ultimately be reasonable. But the point is that there was no submitted reason for the impairment. And even if it's a minimal, minimal impairment on his ability to appear, it's still an impairment that requires a penological interest. It cannot, it would just hold the state. It stands for the proposition that when a warden gets an order from a state court judge to produce someone, we can talk a little bit about whether this order even says that, but let's assume they get such an order that they have to give a reason. They have to articulate the reason for what the Supreme Court has said for 150 years, that they don't, there's no authority for state court requiring the production of someone in federal custody. What case would a warden must give a reason for that? There are two cases that held together could be found to justify that assertion. One is the Bounds versus Smith decision, the Lewis versus Casey decision, holding that there is a right for a prisoner to meaningfully access the courts and then held together with the fact that Supreme Court over its history has repeatedly said that there is a proposition. That's not, that doesn't stand for the proposition that you want, because again, this goes back to Judge Lynch's question to you. If he doesn't have a phonic appearance, he does have meaningful, he does have access to the courts and meaningful access to the court. So this stands for a much narrower position that you're articulating is where you have to think of a reason not to produce someone physically to a courtroom when you get an order from a state court judge. And I don't think there's been any case that even close to that in the history of the United States of America. But what was the second one? It would be the, there's a prohibition on arbitrary government action. So Mr. Russell, can I ask one maybe slightly oblique question to that? You're citing Bounds against Smith. I appreciate that authority here. Would you agree that the state court order, whatever it means, uses the word request, but also is captioned order, is a total red herring in this case? You agree that under Supreme Court precedent, as Judge Nacco says, going back to before the Civil War, a state court can't order a federal warden to do this. So the order is kind of a nullity. And if you're relying on Bounds against Smith, what you're really saying is, if a prisoner requests to be produced in court for a litigation that he instituted in some other state court in some other state, far from the warden's jurisdiction, then the warden is required either to let him go, or just let him go, like just say goodbye and come back when you're done with your court appearance, but to arrange for his transportation, or the warden is required to give a presumably written explanation, why not? Your Honor, that is absolutely correct. That is the totality of our argument. If there is going to be some deviation, and the prisoner should have a right to- Why is there a deviation? Let's start from the basic thing. The question is, the prisoner says, I started a lawsuit in California. Whatever, I was in a car accident before I was incarcerated, and I've sued the person in to California so that I can appear in court. I think it would be a perfectly reasonable thing for a prisoner to think that's right, and he has to do that. And you're saying the warden must either do it, or give a written explanation for why not. Yes? Your Honor, I would step back from the word deviation. Your prior description of it was an excellent description, and I would rely wholly on your Honor's description of it. Isn't that fairly extraordinary? Putting aside the issue of qualified immunity, isn't that an extraordinary thing to say, given that I should think that the presumption would be that being in jail, by definition, means you can't go- You're deprived of your liberty. You can't go to some other place, even for important business. And there would have to be something reasonably compelling to allow that to happen. So I would imagine that the presumption would be, and certainly in practice it seems to me the presumption always has been, that you don't get to go to California for that lawsuit, at least until your presence is actually required for the case to go forward. And that if we're talking about the first conference on the case, assuming that there's any obligation on the warden's part to facilitate this, arranging a telephonic conference would seem clearly to satisfy that. Your Honor, you're correct. It does go to the very limited expansion of business here. It simply concerns the justification. And I would like just to read something from the district court and to encompass what the expansion really was. And this can be found at J49-50. Quote, it could very well be that the prisoner's penological or administrative interests will outweigh the plaintiff's rights. Such a showing has not been made, and the court could easily fathom facts where a prisoner's interests exceed the prison's legitimate penological interests. Hence, allowing prison wardens to arbitrarily and unjustifiably defy state court-issued orders is dangerous and raises constitutional concerns. At this court, at this juncture, the court accepts that the prison had no reason for its action, which is an insufficient basis to deny prisoners rights. That is the expansion in totality. And that's really the issue. To hold for the government is to hold that no reason must be given at all or must be even considered, no standards, and that the prisoner is prohibited from inquiring into why. I would agree. Did anyone say the prisoner is forbidden to ask why? He would have no standing. He would have no ability to inquire. If he has no right. He would have to award him to start with. Is there any indication that he did that? I mean, there's no rule. As your adversary suggested, at a minimum, he could file a grievance if he thought, before we get to anything else, he could file a grievance in the prison system if he thought he was arbitrarily denied. No? Not necessarily, Your Honor. That would go, I think, to the question, the thrust of your question is the alternative remedy. And the ARP was argued by the government. That concerns a condition of one's confinement. This is not necessarily related to King's confinement. It's an extra. So it's not necessarily that they could file a claim under the ARP. I would think it's a condition of your confinement that you can't leave the prison. And under what circumstances you can demand to be allowed to leave the prison, isn't it? Well, not necessarily, Your Honor. We would argue that it's not formally brought under the ARP and that it goes to the alternative remedy, which is something that the court also considers, that there really is no district court considered, no real alternative remedy. But you could go to a district court and ask for a written, as I mentioned, I was talking about earlier, Cochaburg, that you could file some type of action requesting that the district court, the state court judge is telling me if I don't show up for my trial, he's going to dismiss it. Please issue a writ. Why couldn't a federal court judge issue a writ? Your Honor, respectfully, it is a lot to consider to require a pro se prisoner to understand the idea of a writ of a test of a condom. And we would argue that substantively, there is no real alternative remedy. That would be a lot quicker. It would be fantastic if, yeah, it would be a lot quicker. I agree with you, Your Honor. I think your time is up. Thank you very much. Thank you. Cochaburg, you have two minutes in rebuttal. Thank you, Your Honor. Unless the panel has further questions, I believe I'll rest and simply state that the district court should be reversed and the case should be remanded with instructions to dismiss. All right. I don't think there are any further questions. So thank you to both of you. It was our decision. Have a good day. Thank you, too.